UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSEPH WOODRUFF, ERICA JOBE, MANDEE KATZ, and SCOTT BABJAK, | § § § § § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-2993-B |
| | § | |
| CARIS MPI, INC. and CARIS LIFE SCIENCES, INC., | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs Joseph Woodruff, Erica Jobe, Mandee Katz, and Scott Babjak's Verified Application for Preliminary Injunctive Relief (Doc. 2). The Court held a hearing regarding the Application on December 1, 2021. After hearing from both sides, the Court **DENIED** Plaintiffs' Application. This Order further explains the Court's reasoning.

### I.

### BACKGROUND

This case concerns Defendants Caris MPI, Inc. and Caris Life Sciences, Inc. (collectively "Caris")'s implementation of a mandatory vaccination policy for its employees. Caris is a Texas business that "performs molecular testing on DNA, RNA, and proteins to identify cancer and how to optimize treatment of that cancer." Doc. 2, Pls.' Appl., ¶ 5. On September 17, 2021, Caris gave notice to its employees that it had updated its COVID-19 policies such that "all employees . . . [would] be required to be vaccinated to remain employed." *Id.* ¶ 12. The notice provided that

employees who failed to become fully vaccinated by December 1, 2021, would be subject to "administrative termination." Doc. 2-6, Caris Notice.

Plaintiffs are four out-of-state Caris employees who, to date, are unvaccinated and thus subject to termination under Caris's vaccination policy. Doc. 2, Pls.' Appl., ¶ 2. Plaintiffs each submitted a request to be exempted from the vaccination policy on religious grounds, and two—Erica Jobe and Mandee Katz—also requested exemptions on medical grounds. *Id.* ¶¶ 2, 20, 25. Caris denied each of Plaintiffs' exemption requests.[1] *Id.* ¶ 2.

On November 30, 2021, Plaintiffs filed suit alleging that Caris discriminated against them on religious and medical grounds and that Caris's mandatory vaccination policy directly violates Texas executive order GA-40. Doc. 1, Compl., ¶¶ 46–65. In addition, Plaintiffs filed an application for a temporary restraining order ("TRO") and preliminary injunction to enjoin Caris from: (1) "[r]equiring its employees to get vaccinated;" (2) "[t]erminating any employee's employment by reason of the employee's refusal to get a COVID-19 vaccination;" (3) "[r]etailiating against any employee by reasons of the employee's refusal to get a COVID-19 vaccination; and" (4) "[t]aking any other steps to enforce its COVID-19 vaccination policy." Doc. 2, Pls.' Appl., ¶ 61. Plaintiffs' Application is fully briefed and argued.

---

[1] There is some factual dispute as to whether all four plaintiffs are subject to termination. Namely, Caris argues that Plaintiff Babjak was granted a limited medical exemption extending his deadline to become vaccinated to March 2, 2022, and Plaintiff Mandee Katz applied for an exemption under Florida state law on November 30, 2021, which is still pending. *See* Doc. 3, Defs.' Resp., 4. This distinction does not affect the Court's ultimate conclusion that Plaintiffs are not entitled to preliminary injunctive relief. *See infra* Part III.

## II.

## LEGAL STANDARD

"Injunctive relief is an extraordinary and drastic remedy[] and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (internal quotations and citation omitted). To obtain a TRO or preliminary injunction,[2] a plaintiff must show: (1) "a substantial likelihood of success on the merits;" (2) "a substantial threat of immediate and irreparable harm, for which he has no adequate remedy at law;" (3) "that greater injury will result from denying the [preliminary injunctive relief] than from its being granted;" and (4) "that [granting the preliminary injunctive relief] will not disserve the public interest." *Dearmore v. City of Garland*, 2005 WL 1630156, at *1 (N.D. Tex. June 28, 2005) (citing *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987)). If the plaintiff "fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction." *Id.* (emphasis in original).

## III.

## ANALYSIS

The issue presented is whether Plaintiffs have carried their burden to establish the second element of preliminary injunctive relief—that there is "a substantial threat of immediate and irreparable harm" if their application is not granted. *See Dearmore*, 2005 WL 1630156, at *1. The Court concludes they have not and that, therefore, their application must be denied. As such, the

---

[2] "[A] TRO is simply a highly accelerated and temporary form of preliminary injunctive relief, and requires [P]laintiffs to establish the same four elements." *Lee v. Verizon Commc'ns. Inc.*, 2012 WL 6089041, at *1 n.2 (N.D. Tex. Dec. 7, 2012) (internal quotation marks and citation omitted). Thus, because the same standards apply to Plaintiffs' requests for a TRO and preliminary injunction, the Court addresses them together.

Court does not address the parties' arguments as to the remaining elements.³ *See Miller Pharm. Servs., LLC v. Amerisource Bergen Drug Corp.*, 2021 WL 1095322, at *1 (W.D. La. Feb. 5, 2021) (citing *Roho, Inc. v. Marquis*, 902 F.2d 356, 361 (5th Cir. 1990)); *see also Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) ("A preliminary injunction . . . should only be granted if the movant has clearly carried the burden of persuasion on all four . . . prerequisites.").

"In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011); *see Sampson v. Murray*, 415 U.S. 61, 91 (1974). For this reason, courts have found that irreparable harm generally does not result from lost income, financial distress, or the inability to find alternative employment as these are harms that can and are regularly remedied by monetary damages. *See, e.g.*, *Jwalapuram v. Mayorkas*, 2021 WL 2695369, at *2 (N.D. Tex. Mar. 31, 2021) ("As the Fifth Circuit has stated, 'the Supreme Court has squarely held that even complete loss of employment is not cognizable' in the irreparable injury context." quoting *White v. Carlucci*, 862 F.2d 1209, 1212 (5th Cir. 1989)); *Council v. Shinseki*, 384 F. App'x 329, 329 (5th Cir. 2010). Moreover, "speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Daniels Health Scis. L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

Plaintiffs concede that, if they are fired from their jobs, "backpay may be calculated [in the event that the] EEOC sustains their complaints and [they] prevail[]" in litigation. Doc. 2, Pls.' Appl.,

---

³ The Court notes that the parties spent a substantial portion of their time at oral argument discussing whether Plaintiffs are permitted to seek out preliminary injunctive relief prior to receiving a right-to-sue letter from the EEOC under an exception introduced by the Fifth Circuit in *Drew v. Liberty Mut. Ins. Co.*, 480 F.2d 69 (5th Cir. 1973). *Drew* contemplated a "limited class of cases . . . *in which irreparable injury is shown* and the likelihood of ultimate success has been established . . . [where an] individual employee may bring . . . suit to maintain the status quo pending the action of the Commission on the basic charge of discrimination." *Id.* at 72. Because the Court finds that Plaintiffs have not shown irreparable injury, it need not decide whether *Drew* applies here.

¶ 56. However, they submit that "what cannot be compensated [for] or reasonably calculated as a loss is the loss of their religious freedom, or an adverse reaction to the vaccine." *Id.* Specifically, Plaintiffs argue that Caris's vaccination policy requires them to either "forego their strongly held religious beliefs and get the vaccine, or . . . refuse the vaccine and lose their livelihood." *Id.* "Plaintiffs Jobe and Katz," they contend, "are faced with a more dire [decision]" to either "risk the vaccine in light of [their] medical conditions[] or accept that they will be fired from their jobs." *Id.* In support, Plaintiffs cite to a recent Fifth Circuit case, *BST Holdings*, for the proposition that any loss of constitutional freedoms constitutes irreparable injury. *Id.* (citing *BST Holdings, L.L.C. v. Occupational Health & Safety Admin.*, 17 F.4th 604, 618 (5th Cir. 2021)).

In response, Caris argues that none of Plaintiffs' alleged harm is irreparable because *BST Holdings* is distinguishable and Plaintiffs' arguments mirror those rejected in *Sambrano v. United Airlines, Inc.*, 2021 WL 5176691 (N.D. Tex. Nov. 8, 2021). *See* Doc. 3, Defs.' Resp., 7. The Court agrees with Caris.

*BST Holdings* concerned a recent emergency temporary standard ("ETS") issued by the Occupational Safety and Health Administration ("OSHA") in response to the COVID-19 pandemic. 17 F.4th at 609. The ETS required that "employees of covered employers . . . undergo COVID-19 vaccination or take weekly COVID-19 tests and wear a mask." *Id.* To obtain "a stay barring OSHA from enforcing the [ETS] during the pendency of judicial review," the petitioners were required to show that they would "be irreparably injured absent a stay." *Id.* at 609–10. The court granted the stay, finding that the ETS "threaten[d] to substantially burden the liberty interests of reluctant individual recipients put to a choice between their job(s) and their jab(s)" and emphasized that "the

loss of constitutional freedoms 'for even minimal periods of time . . . unquestionably constitutes irreparable injury.'" *Id.* at 618 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

*Sambrano* concerned a defendant-employer's vaccination mandate—specifically its implementation of an accommodation policy for employees who received religious or medical exemptions from the mandate. 2021 WL 5176691, at *1. The plaintiffs alleged that their employer (a private airline) "failed to reasonably accommodate exempted employees" because the only "accommodation" offered to exempt employees was indefinite unpaid leave. *Id.* Relevant here is that the plaintiffs sought a preliminary injunction enjoining the employer from placing exempted employees on unpaid leave for failing to comply with the vaccination mandate. *Id.*

In support of their claim that they would be subject to irreparable harm in the absence of a preliminary injunction, the *Sambrano* plaintiffs argued that "acquiescing to [their employer] and getting the vaccine in violation of their beliefs [would] cause irreparable harm." *Id.* at *4. The court disagreed, finding that this reasoning "conflate[d] the potential harm arising from [the employer's] accommodation policy with the personal difficulty of deciding to decline the vaccine." *Id.* The plaintiffs also argued that they suffered irreparable harm by being forced "to choose between their livelihood and their right to live out their faith absent undue hardship from their employer." *Id.* The Court rejected this argument as well because the plaintiffs did not assert any First Amendment violations and found it inappropriate "to elevate statutory protections from private-company-discrimination to the level of constitutional protections from government encroachment." *Id.* at *5. As such, the Court denied the preliminary injunction.

In the present case, Plaintiffs' theory of irreparable harm is identical to that rejected by *Sambrano* and fails for the same reasons. At base, "Plaintiffs are choosing whether to comply with a

condition of employment, or to deal with the potential consequences of that choice." *Beckerich v. St. Elizabeth Med. Ctr.*, 2021 WL 4398027, at *7 (E.D. Ky. Sept. 24, 2021). While the Court is sympathetic to the difficulty of Plaintiffs' decision, it remains unconvinced that Plaintiffs' alleged harms associated with complying with Caris's vaccination requirement—be they religious or medical in nature—are imminent and non-speculative when Plaintiffs can avoid these purported harms by remaining unvaccinated, even if it means they sustain the reparable harm of losing their employment. *Cf. id.*; *Sambrano*, 2021 WL 5176691, at *4.

Plaintiffs' argument that their "impossible choice" deprives them of constitutional freedoms, automatically establishing irreparable harm, fairs no better. Like the *Sambrano* plaintiffs, Plaintiffs have not alleged any claims that turn on the constitutional validity of state action.[4] *See* Doc. 1, Compl.; Doc. 2, Pls.' Appl.; *Sambrano*, 2021 WL 5176691, at *5; *cf. Beckerich*, 2021 WL 4398027, at *7 ("As previously stated, constitutional rights are not at question here, as Defendants are not state actors. Thus, Plaintiffs' 'constitutional right to privacy' falls short of establishing irreparable harm."). This is in stark contrast to *BST Holdings*, where the constitutional validity of OSHA's ETS was implicated. *See* 17 F.4th at 618. And Plaintiffs have not offered any authority in their briefing or at oral argument supporting their contention that the "loss of constitutional freedoms" vehicle for irreparable harm can be applied in the context of antidiscrimination claims brought against a private employer.[5] *See* Doc. 2, Pls.' Appl., 20; Doc. 6, Pls.' Reply. Absent such authority, the Court declines

---

[4] Plaintiffs Complaint offers conflicting evidence as to whether Caris's vaccination mandate was enacted in response to federal regulation or simply as an independent act of business discretion. *See* Doc. 1, Compl., ¶¶ 26–27, 31. But regardless of the specific circumstances inspiring Caris's vaccination mandate, the key to the Court's inquiry here is that Plaintiffs have not explained how their harms are constitutional in nature.

[5] For this reason, the Court rejects Plaintiffs' contention in their reply brief that because the stay in *BST Holdings* was issued four days after the *Sambrano* decision, it "in essence overrul[ed] . . . *Sambrano*." Doc. 6, Pls.' Reply, ¶¶ 6–7. This interpretation is further buttressed by the fact that, in denying a motion for

to find irreparable harm and concludes that Plaintiffs have failed to show their entitlement to preliminary injunctive relief.

## IV.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Verified Application for Preliminary Injunctive Relief (Doc. 2) is **DENIED.**

**SO ORDERED**.

**SIGNED: December 3, 2021.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

reconsideration of its decision, the *Sambrano* court noted that consideration of *BST Holdings* would not change its analysis because no federal regulation was at issue. *Sambrano v. United Airlines, Inc.*, 2021 WL 5445463, at *1 n.1 (N.D. Tex. Nov. 19, 2021).